

# NUMBER 13-17-00238-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**CORLES ANDRE GILES,**                                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                        **Appellee.**

### On appeal from the 24th District Court of Jackson County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Hinojosa
Memorandum Opinion by Chief Justice Contreras**

Appellant Corles Andre Giles appeals his conviction for possession of more than four but less than 400 grams of synthetic marijuana with intent to deliver, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.103, 481.113(d) (West, Westlaw through 2017 1st C.S.). By seven issues, which we rearrange into five main issues,

appellant argues that: (1) his right to a speedy trial was violated, (2) the trial court erred when it denied him a continuance, (3) the evidence was insufficient, (4) he did not waive his right to a jury, and (5) his guilty plea was not entered intelligently and voluntarily. We affirm.

## I.  BACKGROUND

On June 7, 2015, appellant was a passenger in a car when he was arrested for possession of synthetic marijuana with intent to deliver. *See id.* §§ 481.103, 481.113(d). Appellant was indicted on September 26, 2015, and the indictment included three enhancement paragraphs.[1] On June 30, 2016, appellant filed a motion to dismiss and argued, among other things, that the charge should be dismissed because his right to a speedy trial was violated. The trial court held a hearing on July 7, 2016, denied appellant's motion, and set the trial date for August 8, 2016.

On March 23, 2017, appellant signed a written waiver of his right to a jury in open court. On the day trial was scheduled to begin, he moved for a continuance to subpoena the other passengers in the vehicle, but the trial court denied his motion. Trial proceedings began the next day on March 28, 2017.[2] Appellant pleaded guilty to the offense and true to all three enhancement allegations. The trial court subsequently heard testimony from multiple witnesses and officers, found appellant guilty, and assessed punishment at fifty years' imprisonment in the Texas Department of Criminal Justice—

---

[1] The State alleged appellant had two felony robbery convictions and a felony conviction for burglary of a habitation.

[2] Appellant and the State filed an agreed order of reset on August 8, 2016, which postponed the trial setting to September 19, 2016. Though, the record contains no explanation for the trial delay between September 19, 2016 and March 27, 2017, but it appears that part of the delay was due to plea negotiations.

2

Institutional Division. *See* TEX. PENAL CODE ANN. § 12.32 (West, Westlaw through 2017 1st C.S.). This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his third issue, which we address first, appellant contends the evidence was insufficient to support the intent to deliver element of the offense, and therefore he was guilty of only possession. The State argues that the evidence was sufficient to support appellant's guilty plea. We agree with the State.

### A. Applicable Law and Standard of Review

Once a defendant enters a valid guilty plea, the State is no longer constitutionally required to prove his guilt beyond a reasonable doubt. *See Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009). Yet, no trial court is authorized to render a conviction in a felony case based upon a plea of guilty without sufficient evidence to support the same. *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 1.15 (West, Westlaw through 2017 1st C.S.)). We will affirm the trial court's judgment if the State introduced evidence that embraces every essential element of the offense charged and that is sufficient to establish the defendant's guilt. *See Stone v. State*, 919 S.W.2d 424, 427 (Tex. Crim. App. 1996); *Chindaphone v. State*, 241 S.W.3d 217, 219–20 (Tex. App.—Fort Worth 2007, pet. ref'd).

### B. Analysis

Here, appellant only challenges the sufficiency of the evidence as to the intent to deliver element. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.113(a).

Intent to deliver is a question of fact that may be inferred from the acts, words, or conduct of the accused. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.); *Parramore v. State*, 853 S.W.2d 741, 745 (Tex. App.—Corpus Christi 1993, pet.

3

ref'd). Intent to deliver may also be inferred from the quantity of drugs possessed and the manner of packaging. *Branch v. State*, 599 S.W.2d 324, 325 (Tex. Crim. App. [Panel Op.] 1979); *Taylor*, 106 S.W.3d at 831; *Guy v. State*, 160 S.W.3d 606, 613 (Tex. App.— Fort Worth 2005, pet. ref'd).

At trial, Officer Bryan Martin of Jackson County Sheriff's Department testified that he responded to a call about a vehicle at a McDonald's. Appellant was a passenger in the vehicle. As Officer Martin approached the car, he noticed a black bag that contained packages of synthetic marijuana between appellant's legs. Appellant subsequently admitted to Officer Martin that the black bag and its contents belonged to him. The bag contained seventeen individually wrapped packets of synthetic marijuana, each with a weight of ten grams. Officer Martin testified that the amount he found was not what he would expect someone to have for personal use. Jackson County Sheriff's Deputy Gary Smejkal testified each packet could be used to make twenty to thirty cigarettes and that, at that time, synthetic marijuana was not being sold openly in Jackson County stores. Officer Stacey Cavasos of the Edna Police Department testified that appellant possessed a large amount of synthetic marijuana. This testimony supported appellant's guilty plea to the intent to deliver element of the offense. *See Branch*, 599 S.W.2d at 325; *Chindaphone*, 241 S.W.3d at 219–20; *Guy*, 160 S.W.3d at 613. The evidence is sufficient.

We overrule appellant's third issue.

### III.   SPEEDY TRIAL CLAIM

By his first main issue, appellant argues that his right to a speedy trial was violated. Appellant also argues that the trial court should have held a hearing on his motion to dismiss and that the court should have dismissed the case.

## A.    Applicable Law and Standard of Review

A criminal defendant has the right to a speedy trial. *See* U.S. CONST. amends. VI, XIV; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (West, Westlaw through 2017 1st C.S.); *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014); *see also Dillingham v. United States*, 423 U.S. 64, 65 (1975) (noting that the right to a speedy trial is triggered by formal indictment or arrest). "This ensures that the defendant is protected from oppressive pretrial incarceration, mitigates the anxiety and concern accompanying public accusations, and ensures that the defendant can mount a defense." *Henson v. State*, 407 S.W.3d 764, 766 (Tex. Crim. App. 2013) (citing *Barker v. Wingo*, 407 U.S. 514, 532 (1972)).

We analyze speedy trial claims "on an ad hoc basis," weighing and balancing the factors set forth in *Barker v. Wingo*:   (1) the length of the delay, (2) the reason for the delay, (3) the assertion of the right, and (4) the prejudice to the accused. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008); *see Barker*, 407 U.S. at 530. "While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280. "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id.*

We apply a bifurcated standard of review to a trial court's ruling on a speedy trial claim. *Id.* at 282. We review the factual components for an abuse of discretion, while we

review the legal components de novo. *Id.* Review of the individual *Barker* factors necessarily involves factual determinations and legal conclusions, but the balancing test as a whole is "a purely legal question." *Id.* With regard to the trial court's resolution of factual issues, we view all the evidence in the light most favorable to the trial court's ultimate ruling. *Id.*

## B. Analysis

Here, appellant's motion to dismiss was denied after a hearing on July 7, 2016. Accordingly, we reject appellant's argument that the trial court failed to hold a hearing on his motion to dismiss. Nevertheless, appellant argues that the trial court should have dismissed the case because his right to a speedy trial was violated. In turn, we analyze the four speedy trial factors. *See Barker*, 407 U.S. at 530.

### 1. The First Factor: Length of Delay

The length of the delay between an initial charge and the defendant's demand for speedy trial acts as a triggering mechanism. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (en banc); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999) (en banc). Unless the delay is presumptively prejudicial, courts need not examine the other three factors. *Zamorano*, 84 S.W.3d at 648. Thus, any speedy trial analysis depends first upon whether the delay is more than "ordinary"; if so, the longer the delay beyond that which is ordinary, the more prejudicial that delay is to the defendant. *Gonzalez*, 435 S.W.3d at 809; *Zamorano*, 84 S.W.3d at 649.

Here, the delay of thirteen months between appellant's arrest and the denial of his motion for speedy trial is presumptively prejudicial and sufficient to trigger a *Barker* analysis. *See Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992) (noting that a one-

year delay is presumptively prejudicial); *Shaw v. State*, 117 S.W.3d 883, 888–89 (Tex. Crim. App. 2003) (same). Because the delay of thirteen months triggers judicial examination of the claim, this factor weighs against the State. *See Gonzalez*, 435 S.W.3d at 809; *Zamorano*, 84 S.W.3d at 649.

### 2. The Second Factor: Reason for Delay

Once the length of time is found to be presumptively prejudicial, the burden of justifying the delay falls on the State. *Smith v. State*, 436 S.W.3d 353, 355 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Cantu*, 253 S.W.3d at 280); *see Zamorano*, 84 S.W.3d at 649. Unjustifiable reasons for the delay count towards the "length of delay," while justifiable reasons for delay do not. *Gonzales*, 435 S.W.3d at 810; *see Munoz*, 991 S.W.2d at 822 ("A valid reason for the delay should not be weighed against the government at all"). For example,

> [a] deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded court should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Zamorano*, 84 S.W.3d at 649.

This was a criminal prosecution for possession of synthetic marijuana, and lab work was required to confirm whether the substance appellant was arrested for possessing was a controlled substance. The State explained at the hearing on appellant's motion to dismiss that the delay up until that point was due to a backlog at the lab for drug cases and that the lab had yet to issue a report on the analysis requested by the State. The record indicates that the initial lab work request was submitted on July 20,

7

2015—shortly after appellant's arrest—and that the lab's initial report was issued on July 28, 2016. The government must bear responsibility for failing to provide adequate resources to law-enforcement agencies. *Ex parte Martin*, 33 S.W.3d 843, 847 (Tex. App.—Austin 2000, pet. dism'd); *see Zamorano*, 84 S.W.3d at 649. There is, however, no evidence that the State deliberately delayed appellant's trial for strategic gain. Thus, we conclude that the delay of thirteen months weighs against the State, but not heavily. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003); *Zamorano*, 84 S.W.3d at 649; *Smith*, 436 S.W.3d at 365; *see also Coy v. State*, No. 05-15-00011-CR, 2016 WL 1705153, at *4 (Tex. App.—Dallas Apr. 26, 2016, no pet.) (mem. op., not designated for publication).

### 3. The Third Factor: Assertion of Right

Here, appellant filed a motion to dismiss the case, not a motion for a speedy trial asking the court to set a trial date. "Filing a motion to dismiss instead of a motion for a speedy trial will generally weaken a speedy trial claim because it shows a desire to have no trial instead of a speedy one." *State v. Davis*, 549 S.W.3d 688, 704 (Tex. App.—Austin 2017, no pet.) (citing *Cantu*, 253 S.W.3d at 283; *Zamorano*, 84 S.W.3d at 651 n.40). A defendant can "either fail to insist upon a speedy trial and reap the benefits caused by delay, or he can insist on a prompt trial, and if it is not granted, argue for dismissal." *Henson*, 407 S.W.3d at 769. "If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure." *Cantu*, 253 S.W.3d at 283; *see Davis*, 549 S.W.3d at 704. Appellant provided no such reasons here. Also, "[r]epeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really

want a trial, he wants only dismissal." *Cantu*, 253 S.W.3d at 283*; see Henson*, 407 S.W.3d at 769. Here, appellant only raised his speedy-trial complaint once, and it was raised thirteen months after being arrested. Appellant did not seek a speedy trial after the issuance of the lab results, which confirmed that the substance appellant possessed when he was arrested was in fact synthetic marijuana. "Under *Barker*, appellant's failure to diligently and vigorously seek a rapid resolution is entitled 'strong evidentiary weight.'" *Cantu*, 253 S.W.3d at 283 (quoting *Barker*, 407 U.S. at 531–32).

This factor weighs heavily against appellant.

### 4. The Fourth Factor: Prejudice

"Because 'pretrial delay is often both inevitable and wholly justifiable," the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant." *Id.* at 285. We analyze the prejudice to appellant in light of the interest the speedy trial was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired. *Id.* Prejudice to the accused's defense is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Appellant did not testify that he was anxious or concerned about the case or that his incarceration was oppressive. More importantly, appellant did not testify or argue that his defense was impaired in any way. Finally, appellant raised his speedy-trial complaint thirteen months after being arrested, and his silence for the entirety of that time suggests that any hardships he suffered were either minimal or caused by other factors. *See United States v. Palmer*, 537 F.2d 1287, 1288 (5th Circ. 1976) (concluding that appellant's

9

silence for thirty months after arrest worked against him); *Cantu*, 253 S.W.3d at 284–85 (similar); *cf. Zamorano*, 84 S.W.3d at 652–54.

This factor also weighs heavily against appellant.

## C.    Conclusion

In sum, the evidence in this case fully supports the trial court's ruling.  There was a delay of thirteen months that weighs in favor of finding a violation of appellant's right to a speedy trial.  However, from the record, we conclude that appellant did not really seek a speedy trial; he sought only a dismissal of the charges.  The nature of the State's delay, the tardiness of appellant's sole assertion of his speedy-trial right, and the lack of any substantial personal or defense prejudice resulting from the State's delay convinces us that the trial court did not err in denying appellant's motion for speedy trial.  We conclude appellant was not denied his Sixth Amendment right to a speedy trial.  *See Barker*, 407 U.S. at 534; *Cantu*, 253 S.W.3d at 286–87; *Dragoo*, 96 S.W.3d at 308.

We overrule appellant's first issue.

## IV.    MOTION FOR CONTINUANCE

By his second issue, appellant argues that the trial court erred when it denied his motion for a continuance.  Specifically, appellant argues the trial court erred because he needed more time to subpoena or otherwise secure his witnesses.  The State argues that appellant failed to preserve this issue for our review.

## A.    Applicable Law and Standard of Review

A motion for a continuance must be in writing, set forth in full the sufficient cause for delay, and be sworn by someone having personal knowledge of the facts relied on for the request.  *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08 (West, Westlaw through

10

2017 1st C.S.). Furthermore, when a defendant's first motion for continuance is based on the absence of a witness, the motion must state: the name of the witness and their residence; the diligence used to procure their attendance; the material facts expected to be proved by the witness; that their absence is not due to the defendant; that the motion is not made for delay; and that the witness cannot be secured during the present term of the court. *Id.* art. 29.06 (West, Westlaw through 2017 1st C.S.). "Mere conclusions and general averments are not sufficient for the court to determine their materiality, and the motion for continuance must show on its face the materiality of the absent testimony." *Harrison v. State*, 187 S.W.3d 429, 433 (Tex. Crim. App. 2005).

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Fears v. State*, 479 S.W.3d 315, 325 (Tex. App.—Corpus Christi 2015, pet. ref'd) (citing *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007)). A motion for continuance not in writing and not sworn preserves nothing for review. *Drewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999); *see* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08. Error is also waived if a written and sworn motion does not sufficiently advise the trial court of the defendant's request and the grounds therefor. *See Harrison*, 187 S.W.3d at 433; *see also* TEX. CODE CRIM. PROC. ANN. art. 29.06.

**B.    Analysis**

At the trial court, appellant: (1) filed a written motion for a continuance before trial started and (2) orally moved for a continuance after the State rested its case. It is unclear which trial court decision he complains of on appeal.[3] Either way, as discussed below,

---

[3] Appellant's brief does not cite the clerk's record or the reporter's record in reference to his complaint that the trial court erred when it denied him a continuance. *See* TEX. R. APP. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to

11

we conclude that error was not preserved, and, even if it had been, the trial court did not abuse its discretion.

Here, appellant filed an unsworn written motion for a continuance prior to the beginning of trial. Because appellant's motion was unsworn, he failed to preserve error for our review. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08; TEX. R. APP. P. 33.1; *Drewberry*, 4 S.W.3d at 755. Furthermore, appellant's written motion did not name the witnesses he sought to subpoena or state the information he hoped to obtain from them, as is required by statute. *See* TEX. CODE CRIM. PROC. ANN. art. 29.06. With nothing more, the trial court did not abuse its discretion in denying appellant's written motion for a continuance. *See Harrison*, 187 S.W.3d at 435.

Also, after the State rested its case at trial, appellant urged an oral motion for a continuance. He argued for more time to present the testimony of the witnesses he was not able to get subpoenaed. However, because this motion was not in writing and unsworn, appellant again failed to preserve error for our review. *See Drewberry*, 4 S.W.3d at 755; *Gentry v. State*, 770 S.W.2d 780, 786 (Tex. Crim. App. 1988) (en banc). Moreover, appellant knew of the three witnesses he sought to subpoena since the day of the offense, because they were his fellow passengers in the vehicle when he was arrested. Accordingly, this was not "some unexpected occurrence after trial began, which no reasonable diligence could have anticipated," as is required for a continuance after trial has begun. *See* TEX. CODE CRIM. PROC ANN. art. 29.13. Therefore, the trial court did

---

authorities and to the record."). Nevertheless, out of an abundance of caution and in our sole discretion, we choose to address the issue.

12

not abuse its discretion when it denied this request for a continuance.  *See Gentry*, 770 S.W.2d at 787.

Appellant's second issue is overruled.

### V.  WAIVER OF RIGHT TO A JURY

By his fourth issue, appellant argues that he did not waive his right to a jury before he pleaded guilty.

### A.    Applicable Law

An accused is guaranteed a speedy public trial by an impartial jury under both the United States and Texas Constitutions.  U.S. CONST. amends. VI, XIV; TEX. CONST. art. I, §§ 10, 15; *see Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009).  However, a defendant also has the right to waive his or her right to a jury trial, except when the State seeks the death penalty in a capital felony.  *See* TEX. CODE CRIM. PROC. ANN. arts. 1.13, 1.14(a) (West, Westlaw through 2017 1st C.S.); *Adams v. United States*, 317 U.S. 269, 275 (1942); *Hobbs*, 298 S.W.3d at 197.  The waiver must be made in writing by the defendant in person in open court with the consent and approval of the court and the attorney representing the State.  TEX. CODE CRIM. PROC. ANN. art. 1.13.  The consent and approval of the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney representing the State shall be in writing, signed by that attorney, and filed in the papers of the cause before the defendant enters his plea. *Id.*  In addition, federal due process requires that waivers of constitutional rights—such as the right to a jury—not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and consequences.

13

*Davison v. State*, 405 S.W.3d 682, 686 (Tex. Crim. App. 2013) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see Hobbs*, 298 S.W.3d at 197.

## B.    Analysis

Appellant argues that "neither written nor oral waiver [of his right to a jury] was accomplished." We disagree. On March 23, 2017, appellant, defense counsel, the attorney for the State, and the presiding judge all signed and executed an "Application to Waive Trial by Jury" in open court. The waiver stated that appellant fully understood his right to a jury trial and that he made his waiver request freely and voluntarily. The waiver includes the consent and approval of the attorney for the State and the presiding judge, and the trial court indicated at the hearing that it approved the waiver. This accomplished appellant's waiver of his right to a jury. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13; *Smith v. State*, 363 S.W.3d 761, 767–68 (Tex. App.—Austin 2012, pet. ref'd).

Nevertheless, appellant argues that the written waiver does not include the word "intelligently." When a defendant challenges a jury-trial waiver on appeal, the State must establish through the trial record an express, knowing, and intelligent waiver of that right. *Martinez v. State*, 449 S.W.3d 193, 199–200 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Hobbs*, 298 S.W.3d at 197); *see Davison*, 405 S.W.3d at 686. Whether "there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams*, 317 U.S. at 278.

Here, the trial court asked appellant whether he had discussed with his attorney his waiver of a jury trial, and appellant stated "Yes." The trial court also asked appellant if he wanted to waive his right to a jury, and appellant answered "Yes, Your Honor." The trial court then explained to appellant that he had a constitutional right to be tried by a jury

14

and asked him if he wanted to waive that right. Appellant again answered in the affirmative. The written waiver signed by appellant also stated that he fully understood his right to trial by jury and that he made the request to waive that right "freely and voluntarily."

There is nothing in the record indicating that appellant lacked the mental capacity to waive his right to a jury, was under duress, or was coerced into the waiver. On the contrary, the record reflects that the trial court explained the jury waiver to appellant and made an adequate inquiry to ensure that appellant understood his choice. After reviewing the entire record, we conclude that appellant made a knowing, intelligent, and voluntary waiver of his right to a jury trial. *See Patton v. United States*, 281 U.S. 276, 312 (1930) (noting that for jury waiver to be effective, there must be "express and intelligent consent of the defendant"); *Hobbs*, 298 S.W.3d at 203 n.42 (noting that "for a waiver of a constitutional right to be valid the record must show that it was voluntarily and knowingly made"); *Hoang v. State*, 825 S.W.2d 729, 732 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (concluding that Vietnamese-speaking defendant, who required translation of jury-trial waiver, knowingly and voluntarily waived right to jury trial when trial court asked defendant if he was aware that he had a constitutional right to a jury trial, whether he understood what a jury trial is, and whether he wanted to waive the right and have the matter heard by the court).

Appellant also points out that the trial court did not enter its consent and approval of appellant's jury waiver into the minutes of the court. However, because neither the federal nor the state constitution require that trial by jury waiver be noted in the court's minutes, the failure to waive the right in the manner prescribed by the code of criminal

15

procedure is statutory error, not constitutional error. *See Johnson v. State*, 72 S.W.3d 346, 347–48 (Tex. Crim. App. 2002); *Ex parte Sadberry*, 864 S.W.2d 541, 543 (Tex. Crim. App. 1993). Thus, we analyze harm under appellate rule 44.2(b). *Johnson*, 72 S.W.3d at 348; *see* TEX. R. APP. P. 44.2(b) (providing that if the error does not affect the defendant's substantial rights, then it must be disregarded). Technical violations of the statutory jury waiver requirements in article 1.13 are harmless when the record otherwise reflects that the defendant was aware of his right to a jury trial and that the defendant waived that right. *See Johnson*, 72 S.W.3d at 349. And as previously discussed, appellant was aware of and voluntarily waived his right to a jury trial. Therefore, the trial court's failure to notate the jury waiver in its minutes was harmless error. *See* TEX. R. APP. P. 44.2(b); *Johnson*, 72 S.W.3d at 348.

We overrule appellant's fourth issue.

## VI.    GUILTY PLEA

By his fifth issue, appellant cites the United States Supreme Court decision in *Boykin v. Alabama*, 395 U.S. 238, 242 (1969) and argues that the face of the record lacks an affirmative showing that he entered his guilty plea intelligently and voluntarily.[4]

### A.    Applicable Law

A guilty plea "entails a waiver of three significant constitutional rights: the right against self-incrimination; the right to confrontation; and the right to a trial by jury." *Ex*

---

[4] Texas cases differentiate appellate claims based on due process, whereby an appellant asserts his or her plea was involuntary because it was inadequately informed, and those based on a violation of Texas' statutory admonishment requirements. *Davison v. State*, 405 S.W.3d 682, 691 (Tex. Crim. App. 2013); *Dominguez v. State*, 535 S.W.3d 125, 132–33 (Tex. App.—El Paso 2017, no pet.); *see* TEX. CODE CRIM. PROC. ANN. art. 26.13 (West, Westlaw through 2017 1st C.S.). Appellant only presents an argument based on due process and constitutional law—i.e. that his plea was involuntary because he was inadequately informed.

16

*parte Palmberg*, 491 S.W.3d 804, 807 (Tex. Crim. App. 2016) (citing *Boykin*, 395 U.S. at 243 (1969)). "Because such significant constitutional rights are at stake, due process requires that their relinquishment in the course of a guilty plea be undertaken voluntarily, with sufficient awareness of the consequences." *Id.* (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)); *Davison*, 405 S.W.3d at 686. To be "voluntary," a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises. *Brady*, 397 U.S. at 755; *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). A defendant must have sufficient awareness of the relevant circumstances and must possess an understanding of the law in relation to the facts. *Ex parte Broussard*, 517 S.W.3d 814, 816 (Tex. Crim. App. 2017). A criminal defendant who is induced to plead guilty in a state court in total ignorance of the precise nature of the charge and the range of punishment it carries has suffered a violation of procedural due process. *Davison*, 405 S.W.3d at 686.

To determine whether a defendant's "awareness" was "sufficient" at the time of his plea, a reviewing court looks to whether the plea was a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Ex parte Broussard*, 517 S.W.3d at 816 (citing *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013)). The voluntariness of a guilty plea may be inferred from the relevant circumstances surrounding it. *Ex parte Barnaby*, 475 S.W.3d 316, 323 (Tex. Crim App. 2015) (per curiam); *see Brady*, 397 U.S. at 749. In evaluating whether a plea was voluntary, we consider the entire record and the totality of the circumstances. *Ex parte Barnaby*, 475 S.W.3d at 323; *Griffin v. State*, 703 S.W.2d 193, 196 (Tex. Crim. App. 1986) (en banc). If the record contains no evidence of the rights the defendant was putatively waiving, the

17

conviction must be reversed. *Davison*, 405 S.W.3d at 687; *Stevens v. State*, 525 S.W.3d 893, 896 (Tex. App.—Eastland 2017, pet. ref'd) (noting that "the record must . . . be silent with respect to whether [defendant] was *otherwise* provided, or nevertheless aware of, the requisite information to render his guilty plea voluntary and intelligent") (emphasis in original).

Here, appellant signed a written waiver of arraignment in which he stated that he is mentally competent and "thoroughly understands the nature of the charge pending against [him] in this cause, and the range of punishment attached to the charge." Appellant also pleaded not guilty to the indictment in his waiver of arraignment. The record shows that appellant initially intended to enter a plea on March 27, 2018 but changed his mind that morning. At the hearing that day, at which appellant was present, the State's attorney explained that appellant's punishment range was between 15 years to 99 years or life. The following day, the indictment was read out loud and the trial court subsequently asked appellant whether he wanted to plead guilty or not guilty to the indictment, and appellant stated: "I would plead guilty, Your Honor, for a lesser sentence please." The trial court then reminded appellant that he had a right to plead not guilty and asked appellant again how he wanted to plead; appellant pleaded guilty. This shows that appellant's decision to plead guilty was voluntary and an intelligent choice among alternative courses of actions. *See Ex parte Broussard*, 517 S.W.3d at 816. This also indicates that appellant entered a plea of guilty intelligently and with a strategy: that the trial court would give him a lighter sentence. *See Davison*, 405 S.W.3d at 692; *Gardner v. State*, 164 S.W.3d 393, 399 (Tex. Crim. App. 2005); *Dominguez v. State*, 535 S.W.3d 125, 134–35 (Tex. App.—El Paso 2017, no pet.). Furthermore, we note that appellant

18

does not argue that his guilty plea was the product of any threat, misrepresentation, or any improper promise.  *See Stevens*, 525 S.W.3d at 896.

As previously concluded, appellant successfully and knowingly waived his right to a jury.  And appellant did not waive his right to confront witnesses because the State was still obligated to present witnesses, *see* TEX. CODE CRIM. PROC. ANN. art. 1.15, and appellant's counsel cross-examined the ones presented.  Finally, "failure to give [admonishments regarding the right to confront witnesses or the right against self-incrimination] does not invalidate a plea of guilty otherwise freely and voluntarily made." *Vasquez v. State*, 522 S.W.2d 910, 912 (Tex. Crim. App. 1975); *see Garcia v. State*, 877 S.W.2d 809, 812 (Tex. App.—Corpus Christi 1994, pet. ref'd).

Based on the totality of the circumstances, we conclude that it is reasonable to infer from the record that appellant's plea was intelligent and voluntary.  *See Barnaby*, 475 S.W.3d at 323; *Gardner*, 164 S.W.3d at 395; *Vasquez*, 522 S.W.2d at 912; *Dominguez*, 535 S.W.3d at 133.

We overrule appellant's fifth issue.

## VII.    CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
14th day of March, 2019.

19