

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. WR-91,755-01 & WR-91,755-02

### EX PARTE LOUIE ROLAND GARCIA, Applicant

### ON APPLICATIONS FOR A WRIT OF HABEAS CORPUS
### CAUSE NOS. 2017CR12158-W1 & 2018CR3048-W1
### IN THE 226TH DISTRICT COURT
### BEXAR COUNTY

**YEARY, J., filed a dissenting opinion.**

### DISSENTING OPINION

Today, the Court grants Applicant relief on the theory that his guilty plea was entered involuntarily. Majority Opinion at 3. I am convinced that his plea was voluntary. So, I dissent for essentially the same reasons I dissented in *Ex parte Thompson*, 584 S.W.3d 874 (Tex. Crim. App. 2019) (Yeary, J., dissenting).

While Applicant may have suspected when he entered his guilty plea that some of the contraband he was charged with possessing had been planted by a confidential informant, he apparently could not prove that to be the case. And the prosecutor was

certainly unaware, at that time, that some quantity of the contraband discovered might have been planted. Applicant nevertheless entered a plea of guilty to a lesser offense than he was charged with—mere possession rather than possession with intent to deliver—even knowing that, at some later point, it might become possible to establish where the alleged extra contraband came from.

In *Thompson*, I observed:

> "A defendant may have a sufficient factual awareness" of the State's case against him to render his guilty plea adequately informed to satisfy the constitutional requirement of voluntariness "despite laboring under misapprehensions." *Ex parte Broussard*, 517 S.W.3d 814, 817 (Tex. Crim. App. 2017). "[T]he voluntariness of a defendant's guilty plea is not contingent upon his awareness of the full dimension of the prosecution's case." *Ex parte Palmberg*, 491 S.W.3d 804, 809 (Tex. Crim. App. 2016). "[A]s long as he has sufficient awareness of his circumstances—including an awareness that some facts simply remain unknown to him or are undetermined as of the time of the plea—his potentially unwise plea is still a voluntary one." *Id*. "[I]f a known unknown is discovered to be different than the defendant estimated, it does not necessarily entitle him to relief from his agreement with the State because his estimation turned out to be wrong." *Broussard*, 517 S.W.3d at 818.

584 S.W.3d at 874 (Yeary, J., dissenting). In the instant case, Applicant may have believed that the chances that he could prove that someone planted some of the discovered contraband were not good. He may also have been motivated to plead to a charge of mere possession rather than to a charge of possession with intent to deliver. Consequently, we should not invalidate his plea on the grounds that his plea was involuntary.[1]

---

[1] Applicant also claims he is "actually innocent" under *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996). The Court denies relief on that basis because he has not demonstrated that he was innocent of possessing a lesser quantity of contraband. Majority Opinion at 2–3. For that proposition, the Court relies on *State v. Wilson*, 324 S.W.3d 595, 598 (Tex. Crim. App. 2010).

Applicant might have attempted to prove in the trial court that he was "actually not guilty" of the greater offense with which he was charged. *See Ex parte Saucedo*, 576 S.W.3d 712, 720

Even at this stage, there is no concrete evidence that the confidential informant planted contraband in *this* case—only that he did so in another case. Majority Opinion at 2. So, before granting Applicant relief under these circumstances, the Court should require application of the kind of rubric that the Court devised in *Ex parte Coty*, 418 S.W.3d 597 (Tex. Crim. App. 2014).

In *Coty*, the applicant relied on the fact that a forensic chemist working for the State had demonstrably falsified lab-test results in *other* cases, not the applicant's. On this basis, he argued that the State had obtained his own guilty plea based on false evidence. *Id*. at 598. We held that an applicant's proof of such demonstrable "dry labbing" in other cases could create a presumption of false evidence in the applicant's own case, which the State could then rebut. The Court declared that it would consider an inference that the evidence in question was false if the applicant could demonstrate that: "(1) the technician in question [was] a state actor, (2) the technician . . . committed multiple instances of intentional misconduct in another case or cases, (3) the technician [was] the same technician that worked on the applicant's case, (4) the misconduct [was] the type of misconduct that would have affected the evidence in the applicant's case, and (5) the technician handled and processed the evidence in the applicant's case within roughly the same period of time as the other misconduct." *Id*. at 605. The Court explained that "[o]nce the applicant satisfies

---

(Tex. Crim. App. 2019) (Keasler, J., concurring) ("[A]lthough a *Wilson* claim is functionally similar to a claim of actual innocence, I would not deem an applicant who met the *Wilson* criteria to be 'actually innocent.' I would prefer to call a person in that situation 'actually not guilty' of the charged offense, rather than 'actually innocent' of any offense."). But Applicant did not plead nolo contendere to, nor was he convicted of, possession of a lesser amount of contraband. And the evidence that the confidential informant planted contraband in another case does not necessarily establish that he did so in Applicant's case. He is not entitled, therefore, to obtain relief, even under Judge Keasler's *Saucedo* rationale that he was "actually not guilty" of the greater offense.

this initial burden by establishing the identified factors," he has proven that the technician "engaged in a pattern of misconduct sufficiently egregious in other cases that the errors could have resulted in false evidence being used in the applicant's case." *Id*. It is up to the applicant, the Court said, "to establish the extent of the pattern of misconduct the technician is accused of[,]" but if an "[a]pplicant can establish the necessary predicate facts, then the burden shifts to the State to offer evidence demonstrating that the laboratory technician committed no such intentional misconduct in the applicant's case." *Id*.

The Court also held in *Coty* that the burden of establishing the materiality of the false evidence rested exclusively on the applicant. *Id*. at 605. The Court later explained that an applicant who has pled guilty establishes materiality by showing he would not have made the decision to plead guilty but for the falsified forensic evidence against him. *See Ex parte Barnaby*, 475 S.W.3d 316 (Tex. Crim. App. 2015) ("[T]he materiality of false evidence is measured by what impact that false evidence had on the defendant's decision to plead guilty."). And any relief in such cases ought to be predicated on a false-evidence rationale, not a naked involuntary plea rationale. *See Coty*, 418 S.W.3d at 604 ("Applicant's claim is most analogous to asserting that the State used false evidence to convict him.").

We have subsequently filed and set another post-conviction application for writ of habeas corpus explicitly to decide whether the presumption we applied to the work product of a crooked forensic analyst in *Coty* should also pertain to false evidence generated by another type of state actor, a police officer. *Ex parte Mathews*, No. WR-91,731-01, 2020 WL 6588495 (Tex. Crim. App. Nov. 11, 2020) (not designated for publication). That case

is currently pending before us. It seems to me that the Court ought to consider similarly filing and setting this writ application for the purpose of deciding whether a confidential informant should also potentially count as a state actor for purposes of applying the *Coty* rubric. But the Court does not pursue that route. Instead, it grants Applicant relief predicated on a false rationale that his guilty plea was entered involuntarily.

I respectfully dissent.


FILED:                     June 30, 2021
PUBLISH