

# In the Court of Criminal Appeals of Texas

No. WR-95,426-01

EX PARTE RICHARD LEE HOOPER,

*Applicant*

On Application for Writ of Habeas Corpus
In Cause No. 1487418-A
In the 184th District Court
Harris County

YEARY, J., filed a dissenting opinion.

Applicant pled guilty to the offense of possession of a second-degree-felony amount of methamphetamine. *See* TEX. HEALTH & SAFETY CODE § 481.115(d) (establishing possession of between four and 200 grams of a penalty group one controlled substance as a second-degree felony). Unbeknownst to Applicant, or apparently the prosecutor, at the

time of Applicant's plea, the forensic laboratory had already determined that he had possessed only a third-degree-felony amount of methamphetamine. *See id.* § 481.115(c) (establishing possession of between one and four grams of a penalty group one controlled substance as a third-degree felony). In light of the laboratory results, Applicant now raises two complaints in his habeas application: (1) that his conviction violates due process, given that he possessed a smaller amount of the controlled substance than he was convicted of possessing; and (2) that, because he was not made aware of the laboratory results prior to his plea, his plea was involuntary.

Today the Court grants Applicant relief, under *Ex parte Mable*, 443 S.W.3d 129 (Tex. Crim. App. 2014), on the basis that his plea of guilty was entered involuntarily because he was unaware of the laboratory results at the time of his plea. Majority Opinion at 1. I agree that Applicant is entitled to relief on grounds of due process, but not because his plea was *involuntary*. Given the factual similarity between this case and *Ex parte Thompson*, where I dissented from the Court's judgment in granting relief, I write separately to explain how my opinion in *Ex parte Warfield* drives me to reach a different conclusion today. 584 S.W.3d 874 (Tex. Crim. App. 2019) (Yeary, J., dissenting); 618 S.W.3d 69 (Tex. Crim. App. 2021) (Yeary, J., concurring).[1]

---

[1] In *Thompson*, the applicant had pled guilty to a third-degree-felony level of possession of cocaine when the laboratory had already determined that he possessed only a state-jail-felony amount. 584 S.W.3d at 874 (Yeary, J., dissenting). But neither Thompson nor the prosecutor was aware of the laboratory results at the time of his plea. *Id.* There, as here, the Court granted the applicant relief on his claim of involuntary plea under *Mable. Id.*

## I. VOLUNTARINESS OF PLEA

I would not hold that Applicant's plea was involuntary under *Mable*, for two reasons. First, as I have steadfastly argued, *Mable* was wrongly decided and should be overruled for the reasons articulated by Judge Keasler's concurring opinion in *Ex parte Saucedo*, 576 S.W.3d 712, 712–22 (Tex. Crim. App. 2019) (Keasler, J., concurring), and in my concurring opinion in *Warfield*, 618 S.W.3d at 72–75 (Yeary, J., concurring). I reaffirm my belief today that this Court should overrule *Mable* because it stands for the erroneous proposition that subsequent factual developments, without any "suggestion that [the applicant] was fraudulently misled or coerced into pleading guilty or that [her] plea counsel was ineffective[,]" may *retroactively* render an applicant's plea of guilty involuntary. *Saucedo*, 576 S.W.3d at 721, 719 (Keasler, J., concurring). In my view, "so long as an accused enters a guilty plea with an awareness of what he does not know, it cannot be said that he pled involuntarily." *Warfield*, 618 S.W.3d at 72 (Yeary, J., concurring) (quoting *Saucedo*, 576 S.W.3d at 719 (Keasler, J., concurring)).

Second, in *Ex parte Broussard*, this Court cabined *Mable* to the facts of that case. 517 S.W.3d 814, 820 (Tex. Crim. App. 2017) ("[T]he relief *Mable* affords [is confined to] those applicants whose cases fall within the specific circumstances presented in *Mable* itself."). As the Court explained in *Broussard*, "Mable's guilty plea to possession of a controlled substance was involuntary because, in fact, he was not carrying any illicit substances. It was the complete lack of illicit substances that qualified as a 'crucial' fact in *Mable*'s involuntary-plea calculus." *Id*. The Court then concluded that Broussard's guilty plea was

not rendered invalid simply because subsequent testing revealed that he had possessed a different controlled substance in the same penalty group than both he and the prosecution had believed he had possessed. *Id.* And the Court reached that conclusion because "[a] guilty plea is not necessarily involuntary when a defendant misapprehends a known unknown." *Id.* It is that principle which should govern the Court's involuntary-plea analysis in this case.

At the time of Applicant's plea, both he and the prosecution were content to proceed on the assumption that Applicant had possessed a second-degree-felony quantity of methamphetamine. There was a meeting of the minds on that point. And both parties were willing to take the calculated risk that testing might reveal Applicant had possessed a different amount of methamphetamine than he agreed to plead guilty to possessing. Consequently, the only way to conclude that Applicant's plea was involuntary, in my view, is to impute the knowledge of the laboratory results to the prosecutor and find that the amount of methamphetamine Applicant had possessed was a fact known to the State. In that case, Applicant's plea would be involuntary because the prosecutor affirmatively misled Applicant about the nature of the evidence against him. *Id.* at 817 ("[A] guilty plea induced by the State's misrepresentation . . . is involuntary and may be withdrawn.").

Before the Court could grant Applicant relief on this prosecutorial-misconduct theory of involuntariness, however, it would first "be obliged to decide for certain whether 'the constitutional mandate to disclose exculpatory evidence to defendants under *Brady v. Maryland* extends to the plea[-]bargaining stage of a prosecution'—a

legal question the answer to which remains subject to conjecture." *Thompson*, 584 S.W.3d at 875 (Yeary, J., dissenting) (quoting *Ex parte Palmberg*, 491 S.W.3d 804, 814–15, 814 n.18 (Tex. Crim. App. 2016)). But, as in *Thompson*, the applicant here has not raised such a claim and the Court has not otherwise chosen to address that legal question. *Id.* at 875.[2]

## II. ABSOLUTE ACTUAL INNOCENCE

In *Thompson*, I noted that, even if *Mable* were overruled, the applicant would still potentially be entitled to relief under the "guilty only of a lesser-included offense" variation on an *Elizondo* claim that Judge Keasler recognized in *Saucedo*. *Id.*; *see Saucedo*, 576 S.W.3d at 721 (Keasler, J., concurring). On that theory, "[t]he applicant must show by clear and convincing evidence, that no reasonable juror would have convicted him of the greater offense, or made findings consistent with the heightened sentence, in light of the new evidence." *Saucedo*, 576 S.W.3d at 720 (citing *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996)). However, I acknowledged that in cases in which forensic analysis of the evidence occurs before the applicant's plea—cases like *Thompson* and this one—"we would have to determine whether the evidence was 'new' in contemplation of this 'guilty-only-of-a-lesser-offense' standard[.]" *Thompson*, 584 S.W.3d at 875–76 (Yeary, J., dissenting).

---

[2] For the same reasons I expressed in *Warfield*, I would also not hold that Applicant's sentence was illegal: Applicant received a sentence of three years, which is within the punishment range of a third-degree felony. *See* TEX. PENAL CODE § 12.34(a) (third-degree is punishable "by imprisonment . . . for any term of not more than 10 years or less than 2 years"); *Warfield*, 618 S.W.3d at 73 (Yeary, J., concurring).

Nevertheless, in *Warfield*, I articulated my view that "any applicant who can demonstrate that he is 'actually innocent' in the absolute sense should not be bound by *Elizondo*'s requirement of new facts." 618 S.W.3d at 74 (Yeary, J., concurring). That is, when an applicant can produce "evidence that conclusively proves, not just that a reasonable jury, by clear and convincing evidence, would not have *convicted* him, but that the applicant manifestly *did not commit the offense*[,]" I would deem that applicant actually innocent in the absolute sense. *Ex parte Cacy*, 543 S.W.3d 802, 804 (Tex. Crim. App. 2016) (Yeary, J., concurring) (emphasis in original). That principle "should hold true even for the applicant who, like in . . . *Saucedo*, can show that, under the undisputed facts, he was 'guilty only of' the lesser offense under the penal provision" at issue. *Warfield*, 618 S.W.3d at 75 (Yeary, J., concurring).

Applying that principle to this case, I am convinced that Applicant is entitled to relief, but not because his plea was involuntary—under this Court's current jurisprudence I would only reach that conclusion if the evidence showed the prosecutor, in fact, knew of the laboratory report at the time of Applicant's plea. Rather, in my view, Applicant is entitled to relief on his first due process ground. There he contends that, "[g]iven that the evidence in this case weighed less than 4 grams, the evidence cannot support a conviction for possession of 4 to 200 grams of methamphetamine." I believe this argument fairly raises a "guilty only of a lesser-included offense" claim. The evidence in this case supports that claim because it demonstrates that Applicant was guilty *only* of possession of a third-degree-felony amount of

methamphetamine. He is manifestly not guilty of possessing a second-degree-felony amount of that illegal drug. "Under these circumstances, due process simply will not tolerate the maintenance of a conviction for a greater offense than the facts could possibly support under the controlling penal statute." *Id.* I would reform Applicant's judgment to reflect a conviction for the offense the evidence in this case supports—a third-degree felony.

With these thoughts, I respectfully dissent. I also agree with Presiding Judge Keller, and so I join her dissent as well.

**FILED:**                                                 March 6, 2024
**PUBLISH**